## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James M. Rosenbaum, as Trustee for the Next-of-Kin of Kingsley Fifi Bimpong, | Case No. 25-cv-3881 (KMM/SGE) |
| Plaintiff, | |
| v. | **JOINT ANSWER OF DEFENDANTS JOSEPH MOSENG, MARTIN JENSEN AND LIAM O'SHEA TO PLAINTIFF'S COMPLAINT** |
| Joseph Moseng, Martin Jensen, and Liam O'Shea, in their individual capacities as Eagan Police Officers; Eduardo Decache, Brittany Corbin, Ramsey Strickland, Manuel Hernandez, Heather Hedden, Christopher Severson, and Lucio Manuel Marquez Zazueta, in their individual capacities as Dakota County correctional officers; and Dakota County, | |
| | *Jury Trial Demanded* |
| Defendants. | |

COMES NOW Defendants, Joseph Moseng, Martin Jensen, and Liam O'Shea (hereinafter "City Defendants"), and for their Answer to Plaintiff's Complaint, state and allege as follows:

1.     That City Defendants deny each and every matter and thing contained in Plaintiff's Complaint, except as admitted or qualified herein.

2.     That City Defendants specifically deny they were guilty of any negligent, illegal, improper, or unconstitutional conduct.

3.     That City Defendants deny any allegations in the headings found in the Complaint and put Plaintiff to proof.

4.     With regard to Paragraph 1, City Defendants deny.

5.     With regard to Paragraph 2, City Defendants assert that the allegations regarding "critical hours" are vague and ambiguous as to be incapable of response and, therefore, deny same. As to the remaining allegations in said paragraph, City Defendants deny.

6.     With regard to Paragraph 3, City Defendants deny.

7.     With regard to Paragraph 4, City Defendants assert that the allegations regarding "evaluated" and "late evening hours" are so vague as to be incapable of response and, therefore, deny same. City Defendants admit that Sgt. Moseng conducted a traffic stop after observing a vehicle driven by Kingsley Bimpong (hereinafter "Bimpong") go through a red left turn signal to make a left turn to travel southbound on Pilot Knob Road in the northbound lane of traffic, i.e., driving into oncoming traffic. In addition, Sgt. Moseng saw the vehicle hit the center median prior to initiating a traffic stop on November 16, 2024 at approximately 10:44 p.m. Due to Bimpong's driving conduct, officer observations of Bimpong, and his failure to complete field sobriety testing, he was arrested and charged with Fourth Degree driving while impaired. City Defendants state that Officers Jensen and O'Shea responded to the scene of the traffic stop. With regard to the remaining allegations in said paragraph, City Defendants deny.

8.     With regard to Paragraphs 5 and 6, City Defendants assert that the allegations regarding "the entire time" are so vague as to be incapable of response and, therefore, deny same. City Defendants further assert that the allegations regarding "serious medical condition" and whether Bimpong was "in Eagan police custody" are legal conclusions to

which no response is required. To the extent a response is required, City Defendants deny. With regard to the remaining allegations in said paragraphs, City Defendants deny.

9. With regard to Paragraph 7, City Defendants deny.

10. With regard to Paragraph 8, City Defendants assert that the allegations are so vague so as to be incapable of response and, therefore, deny same. City Defendants affirmatively assert that no individually named Eagan officer was "continuously" with Bimpong from the time the traffic stop was initiated at 10:44 p.m. until his transport to the Dakota County Jail.

11. With regard to Paragraphs 9 and 10, City Defendants deny.

12. With regard to Paragraph 11, as to the first sentence, City Defendants assert that Bimpong's symptoms were consistent with drug impairment and, therefore, Bimpong was transported to the Eagan Police Department, where he was seen by M Health paramedics. After being seen by paramedics, Bimpong was transported to Dakota County Jail. City Defendants admit that Eagan officers did not transport Bimpong to the hospital. As to the second sentence, City Defendants deny that Bimpong had an obvious medical need that was readily apparent to lay persons while in their custody and, therefore, deny and put Plaintiff to proof.

13. With regard to Paragraphs 12, 13, 14, 15, 16, 17, 18, and 19, City Defendants assert that these allegations are not directed to these answering Defendants and, therefore, no response is required. To the extent a response is required, City Defendants deny.

14. With regard to Paragraph 20, City Defendants assert that "medical interventions" are so vague as to be incapable of response and further assert that the

allegations are vague as to time. To the extent that the allegations in said paragraph contain medical conclusions, no response is required. City Defendants further state that the medical records speak for themselves and, to the extent the assertions do not reflect the documentation in the medical records, City Defendants deny and put Plaintiff to proof.

15.     With regard to Paragraphs 21, 22 and 23, City Defendants are without sufficient information to admit or deny and, therefore, deny same. To the extent that the allegations in said paragraphs contain medical conclusions, no response is required. City Defendants further state that the medical records speak for themselves and, to the extent the assertions do not reflect the documentation in the medical records, City Defendants deny and put Plaintiff to proof.

16.     With regard to Paragraph 24, City Defendants assert that the allegations are medical conclusions to which no response is required. Further, City Defendants assert that the allegations seek premature disclosure of medical expert testimony.

17.     With regard to Paragraphs 25, 26, 27, and 28, City Defendants deny.

18.     With regard to Paragraph 29, City Defendants state that, on December 5, 2025, the Court ordered that James M. Rosenbaum be substituted as Plaintiff in the place of Josephine Adu-Gyane and Rosalind Marie Lewis in this matter. As to the remaining allegations, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

19.     With regard to Paragraph 30, City Defendants deny that this Court has jurisdiction over the subject matter since Plaintiff fails to state a claim which would grant

jurisdiction to the Federal Court. Further, City Defendants generally deny the allegations contained in said paragraph.

20.    With regard to Paragraphs 31 and 32, City Defendants state that the allegations are legal conclusions to which no response is required. To the extent a response is required, City Defendants deny.

21.    With regard to Paragraph 33, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

22.    With regard to Paragraph 34, City Defendants assert that the allegations are legal conclusions to which no response is required. Further, to the extent the allegations purport to set forth Bimpong's status as a green card holder, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

23.    With regard to Paragraph 35, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

24.    With regard to Paragraph 36, City Defendants admit that Bimpong was black and, on November 16, 2024, wore his hair in dreadlocks. With regard to the remaining allegations in said paragraph, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

25.    With regard to Paragraph 37, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

26.    With regard to Paragraph 38, City Defendants assert that the allegations regarding "nothing in his background" and "red flags" are so vague as to be incapable of

response and, therefore, deny same. Further, City Defendants are without sufficient information to admit or deny the allegations in said paragraph and, therefore, deny.

27. With regard to Paragraph 39, as to the first sentence, City Defendants admit. As to the second sentence, City Defendants state that the allegations are legal conclusions to which no response is required.

28. With regard to Paragraph 40, City Defendants admit that Moseng was a sergeant. As to the remaining allegations in said paragraph, City Defendants deny.

29. With regard to Paragraph 41, as to the first sentence, City Defendants admit. As to the second sentence, City Defendants state that the allegations are legal conclusions to which no response is required.

30. With regard to Paragraph 42, City Defendants admit that Officer Jensen was a Drug Recognition Evaluator on November 16, 2024. As to the remaining allegations in said paragraph, City Defendants deny.

31. With regard to Paragraph 43, as to the first sentence, City Defendants admit. As to the second sentence, City Defendants state that the allegations are legal conclusions to which no response is required.

32. With regard to Paragraphs 44 and 45, City Defendants assert that these allegations are not directed to these answering Defendants and, therefore, no answer is required.

33. With regard to Paragraph 46, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

34.     With regard to Paragraph 47, City Defendants admit that on November 16, 2024 at approximately 10:43 p.m., Sgt. Moseng observed a vehicle, driven by Bimpong, go through a red left turn signal to make a left turn to go southbound in the northbound lane of Pilot Knob Road. With regard to the remaining allegations in said paragraph, City Defendants deny.

35.     With regard to Paragraph 48, as to the first sentence, City Defendants admit. As to the second sentence, City Defendants assert that the allegations are vague as to time. However, City Defendants assert that, as the vehicle made its left turn, it hit the center median curb with both passenger side tires, going up onto the center median. Moreover, in the process of stopping the vehicle, the vehicle's passenger side tires went up onto the center median curb again.

36.     With regard to Paragraph 49, City Defendants admit that Sgt. Moseng initiated a traffic stop by activating his emergency lights. City Defendants state that the vehicle driven by Bimpong slowed and stopped, still in oncoming traffic, before continuing to proceed southbound in the northbound lane of traffic. While the vehicle proceeded southbound in the northbound lane of traffic, its tires went onto the center median two additional times before reaching the end of the center median. At the end of the center median, the vehicle corrected into the proper lane of travel and pulled over to the right shoulder, ultimately putting its passenger side tires on the curb boulevard.

37.     With regard to Paragraph 50, City Defendants admit.

38.     With regard to Paragraph 51, the allegations regarding "something was very wrong" and "disconcerting condition" and "each passing moment" are so vague as to be incapable of response and, therefore, City Defendants deny same.

39.     With regard to Paragraph 52, City Defendants assert that the allegations are vague as to time as to be incapable of response. To the extent that these allegations relate to Sgt. Moseng's contact with Bimpong while Bimpong was seated in the vehicle during the traffic stop, City Defendants admit Bimpong appeared to be confused, but deny the remainder of said paragraph.

40.     With regard to Paragraph 53, as to the first sentence, City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. As to the second sentence, City Defendants state that the body worn camera footage speaks for itself and deny Plaintiff's characterization of Sgt. Moseng's body worn camera. As to the remaining allegations in said paragraph, City Defendants deny.

41.     With regard to Paragraph 54, City Defendants assert that allegations regarding "the simplest of facts" is so vague as to be incapable of response. Further, City Defendants assert that the allegations are vague as to time. City Defendants also state that the body worn camera footage speaks for itself and deny Plaintiff's characterization of the body worn camera footage. However, City Defendants admit Bimpong did not tell officers his name, where he was coming from, or where he was going. City Defendants further assert that they are without sufficient information to admit or deny Bimpong's state of

mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. As to the remaining allegations in said paragraph, City Defendants deny.

42.     With regard to Paragraph 55, City Defendants assert that the allegations are vague as to time and vague and ambiguous as to "initial interaction" and "those to follow as other officers responded" as to be incapable of response and, therefore, deny same. City Defendants state that Sgt. Moseng's body worn camera footage speaks for itself and deny Plaintiff's characterization of Sgt. Moseng's body worn camera. City Defendants further assert that they are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. However, City Defendants assert that Bimpong responded to several questions appropriately, providing a reasonable basis to conclude that he understood officer questions.

43.     With regard to Paragraph 56, City Defendants assert that, to the extent the allegations purport to set forth Bimpong's mental capacity/cognitive abilities, they are without sufficient information to admit or deny and, therefore, deny same and put Plaintiff to proof. In addition, as to the first sentence, the allegations regarding "inability" and "simple directions" are vague and ambiguous as to be incapable of response and, therefore, City Defendants deny. As to the second sentence, City Defendants state that Bimpong failed to turn his car off when instructed, but exited the car as instructed. Once out of the vehicle, he was asked for his driver's license or identification, and provided Sgt. Moseng with his keys. As to the remaining allegations in said paragraph, City Defendants deny.

44.     With regard to Paragraph 57, City Defendants admit that, at 10:47:43 p.m., Bimpong exited his vehicle, as instructed.

45.     With regard to Paragraph 58, City Defendants state that the allegations are vague as to time as to be incapable of response. To the extent the allegations relate to Bimpong's movements after exiting the car at 10:47 p.m., City Defendants state that Bimpong was able to walk under his own power, but was "unbalanced." As to the remaining allegations in said paragraph, City Defendants deny.

46.     With regard to Paragraph 59, the allegations are so vague as to be incapable of response and, therefore, City Defendants deny. Further, City Defendants assert that Bimpong's behavior was consistent with drug impairment.

47.     With regard to Paragraph 60, City Defendants admit that, at 10:48:41 p.m., Officer Liam O'Shea arrived on scene.

48.     With regard to Paragraph 61, the allegations are vague as to time. However, City Defendants admit that Sgt. Moseng requested Officer Jensen's assistance at the traffic stop.

49.     With regard to Paragraph 62, City Defendants admit.

50.     With regard to Paragraph 63, City Defendants state that the allegations are vague and ambiguous as to "significant" so as to be incapable response. However, City Defendants admit Officer Jensen completed additional training to become a DRE.

51.     With regard to Paragraph 64, City Defendants state that the quoted language is found on the Minnesota State Patrol's website. City Defendants assert that the website speaks for itself and deny Plaintiff's characterization of the content of the website.

52.     With regard to Paragraphs 65, 66, and 67, City Defendants state that Officer Jensen's DRE training speaks for itself. To the extent that Plaintiff is purportedly quoting

portions of training documents and/or presentations, City Defendants state that the training materials speak for themselves and deny Plaintiff's characterization of said materials.

53.     With regard to Paragraph 68, City Defendants admit a test must be passed to obtain DRE certification. With regard to the remaining allegations in said paragraph, the allegations are so vague as to be incapable of response and, therefore, City Defendants deny same.

54.     With regard to Paragraph 69, the allegations are vague as to time as to be incapable of response and, therefore, City Defendants deny same.

55.     With regard to Paragraph 70, to the extent the allegations purport to quote Bimpong during the traffic stop, City Defendants state that the body worn camera footage speaks for itself and deny Plaintiff's characterization of the footage. City Defendants assert that, while, at times, Bimpong said, "I don't know what it is," he also, at times, appropriately responded to questions and followed officer directions.

56.     With regard to Paragraph 71, City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same. City Defendants admit that Bimpong did not provide his name when requested, but deny the remaining allegations in said paragraph.

57.     With regard to Paragraph 72, City Defendants state that the allegations are vague as to time. To the extent the allegations relate to Bimpong's conduct during the traffic stop, City Defendants assert that they are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same. Further, City

Defendants state that the allegations regarding "simple instructions" are vague and ambiguous so as to be incapable of response and, therefore, deny.

58.     With regard to Paragraph 73, City Defendants assert that they are without sufficient information to admit or deny the first clause of Paragraph 73 and, therefore, deny same. City Defendants state that Sgt. Moseng obtained consent to get Bimpong's wallet out of his pocket and was able to identify Bimpong from his driver's license and confirm he worked at the Post Office. As to the remaining allegations in said paragraph, City Defendants deny.

59.     With regard to Paragraph 74, City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same. City Defendants further state that, to the extent the allegations purport to set forth events captured on body worn camera, the body worn camera footage speaks for itself and deny Plaintiff's characterization of the body worn camera footage. Further, City Defendants assert that, when shown his work card, the following interaction was captured on video:

| | |
|---|---|
| Moseng: | So, you work for the Post Office? |
| Bimpong: | Doing what? |
| Moseng: | Your job? |
| Bimpong: | I don't understand what you're saying. |

As to the remaining allegations in said paragraph, City Defendants deny.

60.     With regard to Paragraph 75, City Defendants admit.

61.     With regard to Paragraph 76, City Defendants admit that no criminal history was found during the traffic stop.

62.     With regard to Paragraph 77, City Defendants admit.

63.     With regard to Paragraph 78, the allegations are so vague as to be incapable of response and, therefore, City Defendants deny same.

64.     With regard to Paragraph 79, the allegations are vague as to time so as to be incapable of response. However, City Defendants admit that, consistent with Eagan Police Department policy, Sgt. Moseng and Officer Jensen, at times, temporarily muted the audio on their body worn camera "to exchange information with other law enforcement officers."

65.     With regard to Paragraph 80, City Defendants deny.

66.     With regard to Paragraphs 81, 82, and 83, City Defendants assert that the City's Portable Audio/Video Recorder Policy, Policy 423, speaks for itself and deny Plaintiff's characterization of the policy. While the quoted language in said paragraphs is found in the policy in effect at the time, Plaintiff's characterization of the policy is denied. City Defendants further state that the Portable Audio/Video Recorder Policy is discretionary and deny Plaintiff's characterization that any officer violated this policy. As to the remaining allegations in said paragraphs, Defendants deny.

67.     With regard to Paragraph 84, the allegations are so vague as to be incapable of response. City Defendants further assert that Officer O'Shea's body worn camera speaks for itself and deny Plaintiff's characterization of the body worn camera footage.

68.     With regard to Paragraph 85, City Defendants assert that Officer O'Shea's body worn camera speaks for itself and deny Plaintiff's characterization of said video. City Defendants admit that the quoted language in bullet points 2, 3, 4, and 5 was conveyed by Sgt. Moseng to his partners during the traffic stop. As to the remaining allegations in said paragraph, City Defendants deny.

69.     With regard to Paragraphs 86, 87, 88, and 89, City Defendants deny.

70.     With regard to Paragraph 90, City Defendants assert that a DRE evaluation is not a roadside test and, therefore, deny Plaintiff's allegations that a DRE evaluation should have occurred at the scene of the traffic stop and put Plaintiff to proof.

71.     With regard to Paragraph 91, City Defendants assert that the allegations regarding "training" are vague so as to be incapable of response. To the extent the allegations relate to DRE training, City Defendants assert that a DRE evaluation is not a roadside test and, therefore, deny. As to the remaining allegations in said paragraph, City Defendants deny.

72.     With regard to Paragraph 92, City Defendants assert that a DRE evaluation is not a roadside test and, therefore, deny Officer Jensen was attempting to conduct a DRE at the scene of the traffic stop. However, City Defendants admit that Officer Jensen examined Bimpong's pupils and noted that his pupils were the same size, and appeared to be within normal range. In addition, City Defendants assert that Officer Jensen questioned Bimpong and attempted Standardized Field Sobriety Testing (SFST). As to the remaining allegations, City Defendants deny.

73.     With regard to Paragraph 93, City Defendants state that the allegations are vague as to time and vague and ambiguous as to "testing" so as to be incapable of response and, therefore, deny same. To the extent that the allegations in said paragraph relate to SFST, City Defendants state that Bimpong was unbalanced. City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. City Defendants further assert that Bimpong

14

did not complete SFST. As to the remaining allegations in said paragraph, City Defendants deny.

74.     With regard to Paragraph 94, City Defendants state that they are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. City Defendants further state that Officer Jensen's body worn camera speaks for itself and deny Plaintiff's characterization of said video. City Defendants admit that the quoted language is contained in the video, but deny the remainder of the allegations in said paragraph.

75.     With regard to Paragraph 95, City Defendants state that they are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. City Defendants assert that the allegations are vague as to time so as to be incapable of response. City Defendants further assert that despite appearing confused, Bimpong was, at times, cooperative with directives, showing that he could understand officer commands throughout his interaction with officers. As to the remaining allegations in said paragraph, City Defendants deny.

76.     With regard to Paragraphs 96 and 97, City Defendants deny.

77.     With regard to Paragraph 98, the allegations are vague as to time and vague as to "searched" so as to be incapable of response and, therefore, City Defendants deny. To the extent that the allegations relate to a post-arrest inventory search of the vehicle, City Defendants admit there was no evidence of drug or alcohol use in the vehicle.

78.     With regard to Paragraph 99, City Defendants state that the allegations regarding "search" are so vague as to be incapable of response and, therefore, deny same.

79.     With regard to Paragraph 100, City Defendants assert that SFST was attempted. Although Bimpong complied with the initial commands at the outset of SFST, he did not complete the testing and, therefore, Officer Jensen reported to Sgt. Moseng "He's not going to do fields." As to the remaining allegations in said paragraph, City Defendants deny.

80.     With regard to Paragraph 101, City Defendants state that at 10:58 p.m., Sgt. Moseng called the Post Office to ask if they had an employee named Kingsley Bimpong. City Defendants assert that the allegations regarding "discussed Kingsley" are so vague as to be incapable of response and, therefore, deny same. As to the remaining allegations in said paragraph, City Defendants deny.

81.     With regard to Paragraph 102, the allegations are vague as to time and City Defendants further state that they are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. To the extent the allegations purport to set forth the content of officers' body worn camera, City Defendants state that the body worn camera footage speaks for itself and deny Plaintiff's characterization of said video. Officer O'Shea's body worn camera reveals that when asked, "Do you remember what happened tonight before you got pulled over?", Bimpong responded, "No."

82.     With regard to Paragraph 103, City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. However, City Defendants state that Bimpong denied knowing who the President of the United States is when asked by Officer O'Shea.

16

83.     With regard to Paragraph 104, City Defendants state that Officer O'Shea asked what city they were in, but Bimpong did not respond to the question. As to the remaining allegations in said sentence, City Defendants deny.

84.     With regard to Paragraph 105, the allegations are vague as to time so as to be incapable of response and, therefore, City Defendants deny same. To the extent that Plaintiff is purporting to set forth the content of the body worn camera, City Defendants state that the body worn camera speaks for itself and deny Plaintiff's characterization of said footage.

85.     With regard to Paragraph 106, City Defendants state that, at 11:00 p.m., Sgt. Moseng and Officer Jensen approached Officer O'Shea and Bimpong, who were standing on a sidewalk. As to the remaining allegations in said paragraph, City Defendants deny.

86.     With regard to Paragraphs 107 and 108, City Defendants deny.

87.     With regard to Paragraph 109, City Defendants state that the allegations regarding "shortly thereafter" are so vague as to be incapable of response. City Defendants, however, admit that Plaintiff was placed under arrest for Fourth Degree driving while impaired and handcuffed by Officers Jensen and Moseng at 11:01 p.m.

88.     With regard to Paragraph 110, City Defendants admit that Bimpong was placed under arrest for Fourth Degree driving while impaired. As to the remaining allegations in said paragraph, City Defendants deny.

89.     With regard to Paragraph 111, City Defendants deny.

90.     With regard to Paragraph 112, City Defendants state that after Bimpong's arrest, Sgt. Moseng asked Officer Jensen, "Do you want to do an eval?" City Defendants state that the eval referenced was a DRE evaluation.

91.     With regard to Paragraph 113, City Defendants deny that a DRE was required. However, City Defendants state that the 12-step DRE evaluation matrix includes: (1) breathe alcohol test; (2) interview of arresting officer; (3) preliminary examination; (4) eye examination; (5) divided attention tests; (6) vital signs; (7) dark room checks; (8) check for muscle tone; (9) check for injection sites; (10) interrogation of subject; (11) opinion of evaluator; and (12) toxicological sample. As to the remaining allegations in said paragraph, City Defendants deny.

92.     With regard to Paragraph 114, the allegations regarding what constitutes "vital signs" are medical conclusions to which no response is required. To the extent a response is required, City Defendants deny that all vital signs alleged in Paragraph 114 are contemplated in a DRE evaluation.

93.     With regard to Paragraph 115, City Defendants assert that Officer Jensen was called to the scene based on his experience and training, but deny the remaining allegations in said paragraph.

94.     With regard to Paragraph 116, City Defendants assert that a "full DRE evaluation" could not be performed on scene. City Defendants state that the 12-step DRE evaluation was not required and was not completed as Bimpong did not follow directions when officers attempted to complete the divided attention tests (commonly referred to as SFST) in the field.

95.     With regard to Paragraph 117, the allegations are vague as to time so as to be incapable of response. City Defendants state that Officers Jensen and Moseng spoke regarding their observations, but deny the remaining allegations in said paragraph. Further, to the extent said paragraph purports to set forth the content of body worn camera footage, City Defendants state that the body worn camera footage speaks for itself and deny Plaintiff's characterization of said footage.

96.     With regard to Paragraph 118, as to the first sentence, the allegations are so vague as to be incapable of response and, therefore, City Defendants deny. Further, City Defendants affirmatively state that Officer Jensen was assisting with the DUI investigation and was not called to conduct a DRE evaluation. As it pertains to the second sentence of said paragraph, the allegations regarding "vital signs" are so vague as to be incapable of response and, therefore, City Defendants deny same. City Defendants admit no pulse was obtained by the officers, but affirmatively state that paramedics observed Bimpong while at the Eagan Police Department.

97.     With regard to Paragraph 119, the allegations are vague as to time so as to be incapable of response. Further, the allegations regarding "very little ability to communicate" are vague and ambiguous and, therefore, City Defendants deny same. City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. City Defendants assert that Bimpong ignored and/or did not appropriately respond to officer questions, but deny the remaining allegations in said paragraph.

98.    With regard to Paragraph 120, City Defendants admit that Officer Jensen transported Bimpong to the Eagan Police Department and arrived at the police department at 11:09:43 p.m. As to the remaining allegations in said paragraph, City Defendants deny.

99.    With regard to Paragraph 121, City Defendants deny and affirmatively state that Bimpong was able to exit the squad and walk independently into the Eagan Police Department.

100.   With regard to Paragraph 122, City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities, but admit that he appeared to be confused, which is consistent with drug impairment.

101.   With regard to Paragraph 123, as to the first sentence, City Defendants admit that Bimpong walked into the police department with Officer Jensen and, at 11:11 p.m., was told he could sit on a bench. As to the second sentence, City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof. City Defendants assert that, when Bimpong did not immediately sit on an available bench, Officer Jensen asked him if he wanted to stand. Bimpong stood for approximately two minutes before sitting under his own power. With regard to the remaining allegations in said paragraph, City Defendants deny.

102.   With regard to Paragraph 124, City Defendants admit that a search warrant was obtained for Bimpong's blood. As to the remaining allegations in said paragraph, the allegations are so vague as to be incapable of response and, therefore, City Defendants deny.

103.    With regard to Paragraph 125, City Defendants admit Bimpong was handcuffed while at the Eagan Police Department. City Defendants assert that the remaining allegations are medical conclusions to which no response is required and seek the premature disclosure of medical expert testimony. To the extent a response is required, City Defendants deny.

104.    With regard to Paragraph 126, City Defendants deny.

105.    With regard to Paragraph 127, City Defendants state that the allegations are vague as to time and vague and ambiguous as to be incapable of response. Further, to the extent the allegations relate to Bimpong's condition at the Eagan Police Department, City Defendants affirmatively state that Bimpong was handcuffed and, during the blood draw, his right hand was handcuffed to a bench and, therefore, City Defendants deny and put Plaintiff to proof.

106.    With regard to Paragraph 128, City Defendants deny Bimpong was showing single-sided weakness or non-function and, therefore, deny. City Defendants state that they were, however, aware that weakness on one side of the body may be indicative of stroke.

107.    With regard to Paragraph 129, City Defendants state that the allegations regarding "the simplest of questions" are so vague and ambiguous as to be incapable of response and, therefore, deny same. City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof.

108.    With regard to Paragraph 130, Defendants admit that, at approximately 11:16 p.m., Sgt. Moseng called the U.S. Postal Service for a second time and spoke with an

employee. The employee provided information regarding Bimpong's employment, including its duration. To the extent the allegations in said paragraph purport to set forth the content of Sgt. Moseng's body worn camera, City Defendants state that the body worn camera speaks for itself and deny Plaintiff's characterization of said video.

109.    With regard to Paragraphs 131 and 132, City Defendants state that at 11:21 p.m., while waiting for M Health paramedics to respond and based on officer observations of Bimpong, Jensen said, "If it's not medical, I would assume a dissociative [anesthetic] of some sort." As to the remaining allegations in said paragraphs, City Defendants deny.

110.    With regard to Paragraph 133, City Defendants deny and affirmatively state that the behavior exhibited by Bimpong and observed by officers was consistent with drug impairment.

111.    With regard to Paragraph 134, City Defendants admit.

112.    With regard to Paragraph 135, City Defendants state that the allegations are vague as to the BWC referenced so as to be incapable of response. City Defendants further state that the BWC speaks for itself and deny Plaintiff's characterization of said video.

113.    With regard to Paragraph 136, City Defendants state that U.S. Postal Service (USPS) personnel informed Moseng that Bimpong had left work, "not been seen for several hours," and was complaining of a headache, causing one co-worker to believe he was losing his mind. USPS personnel also reported he left personal belongings at work, including his cell phone. Due to this report, Moseng again questioned Bimpong while waiting for M Health paramedics to arrive. To the extent that the allegations purport to set forth various portions of body worn camera, City Defendants state that the body worn

camera speaks for itself and deny Plaintiff's characterization of said footage. As to whether the reports constituted "classic stroke symptoms," City Defendants assert that the allegations are medical conclusions to which no response is required. Further, City Defendants assert that the allegations seek premature disclosure of medical expert testimony. As to the remaining allegations in said paragraph, City Defendants deny.

114. With regard to Paragraph 137, City Defendants state that the allegations regarding "this information" is so vague as to be incapable of response and, therefore, deny same. However, City Defendants state that Moseng and Jensen conversed throughout the incident regarding their observations and information provided by USPS personnel.

115. With regard to Paragraph 138, City Defendants deny.

116. With regard to Paragraph 139, the allegations are vague and ambiguous and vague as to time as to be incapable of response. To the extent the allegations purport to set forth the content of conversations captured on body worn camera, City Defendants state that the body worn camera speaks for itself and deny Plaintiff's characterization of said footage.

117. With regard to Paragraphs 140 and 141, City Defendants deny that Bimpong made any complaints to officers at any time. To the contrary, he denied that his head hurt or that he had any other medical issues. To the extent the allegations in said paragraphs purport to set forth the content of body worn camera footage, City Defendants deny Plaintiff's characterization and state that the body worn camera footage speaks for itself.

118. With regard to Paragraph 142, City Defendants state that the officers discussed how to proceed, including placing Bimpong on a transport hold due to his

suspected drug impairment. As to the remaining allegations in said paragraph, City Defendants deny.

119.  With regard to Paragraph 143, City Defendants deny.

120.  With regard to Paragraph 144, the allegations are vague as to time so as to be incapable of response. City Defendants state that, based on the totality of his observations, Officer Jensen concluded that the behavior exhibited by Bimpong was caused by a dissociative anesthetic.

121.  With regard to Paragraph 145, City Defendants admit that, at 11:50 p.m., M Health paramedics arrived at the Eagan Police Department. City Defendants assert that paramedics spent seventeen minutes observing and interacting with Bimpong, including observing his demeanor, behavior, ability to respond to questions, and obtaining a blood draw pursuant to a search warrant obtained by officers.

122.  With regard to Paragraph 146, City Defendants state that the allegations regarding "simple direction" are vague and ambiguous so as to be incapable of response and, therefore, deny same. To the extent the allegations relate to a request that Bimpong "scoot over" on the bench where he was sitting, City Defendants admit that Bimpong was asked to "scoot over" so the blood draw could be performed. After scooting over, Bimpong's right arm was handcuffed to the bench and blood was drawn from his left arm. As to the remaining allegations in said paragraph, City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities and, therefore, deny same and put Plaintiff to proof.

123.  With regard to Paragraph 147, City Defendants deny.

124.    With regard to Paragraph 148, City Defendants admit that Bimpong had drool in his beard and pointed out drool in his beard in the presence of paramedics. In the presence of paramedics, Sgt. Moseng told Bimpong to, "Wipe your beard. You have stuff in it." In response, Bimpong nodded but did not wipe his beard. City Defendants are without sufficient information to admit or deny Bimpong's state of mind/cognitive abilities, and, therefore, deny same and put Plaintiff to proof.

125.    With regard to Paragraph 149, City Defendants deny and affirmatively state that paramedics spoke with Bimpong, asked how he was feeling, including whether he was dizzy, and obtained his consent to conduct a blood draw.   In total, paramedics spent seventeen minutes at Eagan Police Department, interacting with Bimpong, observing his demeanor, and behavior.

126.    With regard to Paragraphs 150 and 151, City Defendants state that, when paramedics first arrived at the Eagan Police Department and before they had interacted with Bimpong, a paramedic asked Moseng, "Are you planning to have him transported to the hospital after the blood draw?" and Moseng responded, "Don't know yet" as he was providing the paramedics with the opportunity to observe Bimpong and officers defer to the paramedics' assessment regarding whether an arrestee requires transportation to a hospital. City Defendants affirmatively state that, at no time, did paramedics suggest that Bimpong should be transported to the hospital or that he was experiencing any objectively serious medical condition, including, but not limited to, a stroke. To the extent that the allegations purport to set forth the content of Sgt. Moseng's body worn camera, City

Defendants state that the body worn camera speaks for itself and deny Plaintiff's characterization of said video.

127. With regard to Paragraph 152, City Defendants state that at 11:56 p.m., Sgt. Moseng and Officer Jensen discussed an "eval," but concluded that a DRE evaluation could not be completed as Bimpong had previously failed to participate in Step 5 – Divided Attention Tests, commonly referred to as field sobriety testing.

128. With regard to Paragraph 153, City Defendants admit the "eval" referenced was a DRE evaluation.

129. With regard to Paragraph 154, City Defendants state that the length of time it would take to complete a DRE evaluation with a noncompliant subject was discussed. To the extent the allegations in said paragraph purport to set forth the content of body worn camera footage, City Defendants deny Plaintiff's characterization and put Plaintiff to proof. As to the remaining allegations in said paragraph, City Defendants deny and affirmatively state that Officer Jensen concluded a DRE could not be completed as he believed Bimpong would not complete Divided Attention Tests since he did not complete SFST at the scene of the traffic stop.

130. With regard to Paragraph 155, City Defendants admit that Officer Jensen called Ryan Winegardner, another DRE, to discuss whether to proceed with a "partial" DRE evaluation in light of his conclusion that Bimpong would not complete Step 5 - Divided Attention Tests.

131.    With regard to Paragraph 156, City Defendants admit that, consistent with departmental policy, Officer Jensen muted his body worn camera when conferring with Officer Winegardner.

132.    With regard to Paragraph 157, City Defendants deny.

133.    With regard to Paragraph 158, City Defendants state that Officer Jensen determined he could not complete a DRE evaluation as it is a "standardized process" and, Bimpong did not complete standardized field sobriety testing previously and, therefore, officers did not believe he would complete Divided Attention Tests during the standardized DRE evaluation. Because "You can't skip that step," Jensen said, "I don't want to sit here for two hours when we have more than enough [probable cause]" to arrest for driving while impaired. City Defendants affirmatively state that probable cause for driving under the influence does not require a DRE evaluation and can be based on driving conduct and officer observations alone. To the extent the allegations in said paragraph purports to set forth the content of body worn camera footage, City Defendants state that the body worn camera footage speaks for itself and deny Plaintiff's characterization of said video.

134.    With regard to Paragraph 159, while officers discussed whether it would be appropriate to skip steps in the standardized DRE evaluation, Bimpong was in the presence of paramedics, seated on a bench with a paramedic crouched next to him. As to the remaining allegations in said paragraph, City Defendants deny.

135.    With regard to Paragraph 160, City Defendants deny.

136.    With regard to Paragraph 161, City Defendants state that Officer Jensen explained the DRE process generally to Sgt. Moseng, stating that "for the DRE stuff, …

typically [the arresting officer] just do[es his/her] fields [sobriety testing], then let's say, if let's say [Officer Winegardner] and I aren't here, you would call somebody to come over after that's all done and then most likely you're already gonna have your [probable cause]." Officer Jensen explained that, when standardized field sobriety testing cannot be completed, the DRE evaluation is "just gonna be a whole bunch of time wasted." To the extent that the allegations in said paragraph purport to set forth body worn camera footage, City Defendants state that the body worn camera footage speaks for itself and deny Plaintiff's characterization of said footage. As to the remaining allegations in said paragraph, City Defendants deny.

137.    With regard to Paragraph 162, the allegations regarding "by that point" and "vital signs" are so vague as to be incapable of response and, therefore, City Defendants deny same.

138.    With regard to Paragraph 163, City Defendants state that, after paramedics spent seventeen minutes with Bimpong, Sgt. Moseng stated that he had "never seen anyone this messed up" and continued to discuss Bimpong's symptoms with Officer Jensen, which they concluded were consistent with drug impairment. As to the remainder of said paragraph, City Defendants deny.

139.    With regard to Paragraph 164, City Defendants admit the quoted language is contained in Officer Jensen's body worn camera, but deny Plaintiff's characterization of said video. Further, City Defendants assert that Officer Jensen was expressing his opinion as a law enforcement officer that Bimpong was exhibiting signs of dissociative anesthetic impairment. As to the second sentence, City Defendants deny and put Plaintiff to proof.

140.    With regard to Paragraph 165, the allegations are vague as to be incapable of response and, therefore, City Defendants deny. To the extent the allegations purport to set forth Officer Jensen's body worn camera, City Defendants assert that the body worn camera footage speaks for itself and deny Plaintiff's characterization of the video.

141.    With regard to Paragraph 166, the allegations are vague as to time. Further, City Defendants assert that Officer Jensen concluded he could not complete a standardized DRE evaluation as he believed Bimpong would not complete Divided Attention Tests since he did not complete SFST at the scene of the traffic stop. As to the remaining allegations in said paragraph, City Defendants deny.

142.    With regard to Paragraph 167, City Defendants deny.

143.    With regard to Paragraph 168, City Defendants assert that officers discussed muscle tone in the context of dissociative anesthetics and noted that Bimpong's muscle tone was not rigid. To the extent that said paragraph purports to set forth the content of the officers' body worn camera footage, City Defendants state that the body worn camera footage speaks for itself and deny Plaintiff's characterization of said video. As to the remaining allegations in said paragraph, City Defendants deny.

144.    With regard to Paragraphs 169, 170, and 171, City Defendants state that the allegations in these paragraphs are medical conclusions to which no response is required. Further, City Defendants assert that the allegations call for medical conclusions to which no response is required. To the extent a response is required, City Defendants deny.

145.    With regard to Paragraph 172, the allegations are vague as to time and vague and ambiguous as to "their decision finalized" and, therefore, City Defendants deny. City

Defendants admit, however, that after the blood draw was completed, Officer Jensen transported Bimpong to the Dakota County Jail.

146. With regard to Paragraph 173, City Defendants deny.

147. With regard to Paragraph 174, City Defendants assert that the officers continued to observe Bimpong and Sgt. Moseng commented that Bimpong's eyes were huge. However, the officers had Bimpong stop walking so they could more closely observe his pupils. Upon further assessment, Officer Jensen noted that Bimpong's pupils were equal in size and within normal range.

148. With regard to Paragraph 175, City Defendants assert that the allegations regarding "stumble" are so vague as to be incapable of response. City Defendants assert that Bimpong walked under his own power to the squad. As to the remaining allegations in said paragraph, City Defendants deny.

149. With regard to Paragraph 176, City Defendants assert that the allegations as to "struggled" are so vague as to be incapable of response. City Defendants affirmatively state that Bimpong got into the squad without issue and that, as a courtesy to ensure Bimpong's foot would not get bumped when the squad door was closed, Officer Jensen moved Bimpong's foot slightly prior to closing the door. As to the remaining allegations in said paragraph, City Defendants deny.

150. With regard to Paragraph 177, City Defendants state that at approximately 12:20 a.m., Sgt. Moseng's contact with Bimpong had ended and, therefore, he shut off his body worn camera. As Officer Jensen was preparing to transport Bimpong to the Dakota County Jail, his body worn camera remained activated.

151.    With regard to Paragraphs 178 and 179, City Defendants state that, on the driver's side of the squad, Officer Jensen and Sgt. Moseng had a brief conversation, some of which is captured on body worn camera and squad video. This includes Sgt. Moseng's comments that "Right before you got there, I was like is this guy having a stroke, is he diabetic, is he on drugs?" City Defendants assert that this comment reflects the potential causes for Bimpong's behavior that were considered by the officers prior to reaching the conclusion that the cause was suspected drug impairment. City Defendants deny that Sgt. Moseng concluded, at any time, that Bimpong was experiencing a stroke and put Plaintiff to proof. As to the remaining allegations in said paragraphs, City Defendants deny.

152.    With regard to Paragraph 180, City Defendants state that, consistent with departmental policy, Sgt. Moseng and Officer Jensen conferred in the garage with Sgt. Moseng's body worn camera off and Officer Jensen's body worn camera muted. City Defendants assert that Officer Jensen's in car squad camera was activated and captured portions of the conversation.

153.    With regard to Paragraphs 181 and 182, City Defendants deny.

154.    With regard to Paragraphs 183, 184, and 185, City Defendants assert that the body worn camera footage speaks for itself and deny Plaintiff's characterization of said footage.

155.    With regard to Paragraph 186, City Defendants admit.

156.    With regard to Paragraph 187, City Defendants assert that Officer Jensen transported Bimpong to the Dakota County Jail, arriving at 12:47 a.m.

157.    With regard to Paragraph 188, upon arrival, Officer Jensen stated "One adult male, no issues." This is a reference to the fact that jailers did not need to meet Officer Jensen in the sally port to escort Bimpong into the jail as he was not physically resistant. As to the remaining allegations in said paragraph, City Defendants deny.

158.    With regard to Paragraph 189, the allegations are vague and ambiguous so as to be incapable of response. To the extent a response is required, City Defendants deny.

159.    With regard to Paragraph 190, City Defendants assert that the allegations are so vague as to be incapable of response and, therefore, deny same. City Defendants assert that after correctional officers completed a pat-down of Bimpong, he was escorted to another portion of the jail and Officer Jensen had no further contact with him.

160.    With regard to Paragraph 191, City Defendants deny and affirmatively assert that Sgt. Moseng made contact with Bimpong at 10:44 p.m. and his final contact with Bimpong was at 12:20 a.m. Officer Jensen first made contact with Bimpong at 10:52 p.m. and his final interaction with Bimpong occurred shortly after 12:50 a.m. Officer O'Shea made contact with Bimpong at 10:49 p.m. and had no further contact with him after 11:03 p.m.

161.    With regard to Paragraphs 192 and 193, City Defendants deny.

162.    With regard to Paragraph 194, City Defendants admit that the quoted language is contained in Sgt. Moseng's incident report, but state that the incident report speaks for itself and deny Plaintiff's characterization of the report.

163.    With regard to Paragraph 195, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

164.     With regard to Paragraphs 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 236, 237, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 382, 383, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463 and 464, City Defendants assert that these allegations are directed to the County Defendants and, therefore, no response is required. To the extent a response is required, City Defendants deny.

165.     With regard to Paragraph 227, City Defendants are without sufficient information to admit or deny the content of the Jail Profile Report and, therefore, deny same. City Defendants assert that Officer Jensen's body worn camera and squad video show that Bimpong arrived at the Dakota County Jail at 12:47 a.m.

166.     With regard to Paragraph 228, City Defendants assert that the allegations regarding "struggled," "staggered around," and "dysfunctional" are so vague as to be

incapable of response and, therefore, deny same. As to the remaining allegations in said paragraph, City Defendants deny.

167. With regard to Paragraphs 229, 230, and 231, City Defendants assert that the allegations are medical conclusions to which no response is required. Further, City Defendants assert that the allegations seek premature disclosure of medical expert testimony.

168. With regard to Paragraph 232, City Defendants assert that the allegations seek medical conclusions to which no response is required. Further, City Defendants assert that the allegations seek premature disclosure of medical expert testimony. City Defendants specifically deny that Bimpong reported or appeared to be exhibiting the conditions listed in said paragraph in their custody and put Plaintiff to proof. As to the remaining allegations in said paragraph, City Defendants deny.

169. With regard to Paragraph 233, City Defendants admit Eagan police officers did not take Bimpong's vital signs, but affirmatively state that he was seen by paramedics, who did not indicate that he required emergent medical treatment. As to the remaining allegations in said paragraph, City Defendants deny and put Plaintiff to proof.

170. With regard to Paragraph 234, City Defendants state that the allegations are vague as to time and vague and ambiguous so as to be incapable of response and, therefore, deny same.

171. With regard to Paragraph 235, the allegations regarding "intake area" are vague and ambiguous so as to be incapable of response and, therefore, City Defendants deny same.

172.    With regard to Paragraph 238, City Defendants assert that Officer Jensen was met by correctional officers in a vestibule area to the jail. As to the remaining allegations in said paragraph, City Defendants are without sufficient information to admit or deny and, therefore, deny same.

173.    With regard to Paragraph 285, to the extent the allegations relate to observations of Bimpong when he exited Officer Jensen's squad, City Defendants deny. As to the other allegations in said paragraph, they are directed to the County Defendants and, therefore, no response is required. To the extent a response is required, City Defendants deny.

174.    With regard to Paragraph 343, City Defendants admit Eagan officers did not take Bimpong's vitals, but affirmatively state that he was seen by paramedics, who did not indicate that he required emergent medical treatment. As to the remaining allegations in said paragraph, City Defendants deny.

175.    With regard to Paragraphs 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, and 380, City Defendants state that said allegations in said paragraphs contain medical conclusions to which no response is required. City Defendants further assert that the medical records and autopsy speak for themselves and, to the extent the assertions do not accurately reflect the documentation in the medical records/autopsy, City Defendants deny same and put Plaintiff to proof.

176.    With regard to Paragraph 381, City Defendants are without sufficient information to admit or deny and, therefore, deny same and put Plaintiff to proof.

177.     With regard to Paragraph 384, City Defendants state that, upon information and belief, Bimpong was employed by USPS on November 16, 2024. As to the remaining allegations, City Defendants deny.

178.     With regard to Paragraph 385, City Defendants assert that a USPS employee reported that there were no issues with Bimpong. However, City Defendants are without sufficient information to admit or deny the accuracy of this report and, therefore, deny same and put Plaintiff to proof.

179.     With regard to Paragraph 386, City Defendants are without sufficient information to admit or deny and, therefore, deny same and put Plaintiff to proof.

180.     With regard to Paragraphs 387, 388, 389, and 390, City Defendants deny.

181.     With regard to Paragraph 421, City Defendants assert that no response is required. To the extent a response is required, City Defendants deny.

182.     With regard to Paragraphs 422, 423, 424, 425, 426, 427, 428, 429, 430, 431, and 432, City Defendants deny.

183.     With regard to the Prayer for Relief, City Defendants deny and put Plaintiff to proof.

## AFFIRMATIVE DEFENSES

1.     That Plaintiff's Complaint fails to state a claim upon which relief can be granted against the City Defendants.

2.     That Plaintiff's claims are barred, in whole or in part, by qualified immunity.

3. That City Defendants at all times were performing discretionary acts in the scope of their duties with the good faith belief that their conduct was lawful, constitutional and proper.

4. That Plaintiff's claimed damages, if any, are the result of intervening or superseding events or acts of third parties or others that were not proximately caused by any action or inaction of the City Defendants.

5. That City Defendants were at all times executing discretionary functions in a lawful manner and did not deprive Bimpong of any of his constitutional rights.

6. That City Defendants specifically deny that they were deliberately indifferent to Bimpong and deny violating his constitutional rights or any federally protected civil rights.

7. That any injuries or damages sustained by Plaintiff were the result of Bimpong's natural disease processes, including, but not limited to, medical conditions that may have pre-existed his November 16, 2024 traffic stop and/or resulted from Bimpong's own refusal to comply with the recommendations of health care providers, for which City Defendants are not responsible.

8. That City Defendants at all times acted reasonably and properly.

9. That Plaintiff's claims are barred because of no constitutional injury.

10. That Plaintiff has failed to join an indispensable party.

11. That upon information and belief, Bimpong failed to follow physician recommendations for treatment of pre-existing medical conditions.

12.     That Plaintiff's claims may be barred by any/all of the affirmative defenses contemplated in Rule 8(c) of the Federal Rules of Civil Procedure and which are not specifically set forth above. The extent to which Plaintiff's claims may be barred by one or more said affirmative defenses cannot be determined until there has been further investigation and/or discovery. City Defendants, therefore, allege and incorporate all of the affirmative defenses set forth in Fed.R.Civ.P. 8(c).

WHEREFORE, City Defendants deny liability to Plaintiff, and pray that Plaintiff take nothing against them by Plaintiff's pretended claim for relief herein; that they be given judgment for their costs, disbursements and attorneys' fees, and for such other relief as the Court may deem just and equitable; and further, City Defendants pray that Plaintiff's Complaint be dismissed with prejudice and that Judgment be entered in favor of City Defendants in accordance with said Order of Dismissal.

**JARDINE, LOGAN & O'BRIEN, P.L.L.P.**

Dated: December 22, 2025

By: s/ Vicki A. Hruby
    Vicki A. Hruby, #0391163
    Joseph E. Flynn, #0165712
    Sarah N. Austin, #0505672
576 Bielenberg Drive, Suite 100
Woodbury, MN 55125
Telephone: (651) 290-6500
Facsimile: (651) 223-5070
vhruby@jlolaw.com
jflynn@jlolaw.com
saustin@jlolaw.com

***Attorneys for Defendants Joseph Moseng, Martin Jensen and Liam O'Shea***